IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ALLISON VAN GORP,

                          Plaintiff,                          OPINION AND ORDER

          v.
                                                              19-cv-740-wmc

WAL-MART STORES, INC.,

                          Defendant.

Plaintiff Allison Van Gorp is a former employee of defendant Wal-Mart Stores, Inc. ("Walmart") and former class member in *Wal-Mart Stores, Inc. v. Dukes*, 546 U.S. 338 (2011), in which the Supreme Court decertified a class of female employees pursuing a Title VII sex discrimination claim. She is now pursuing her individual sex discrimination claim in this action. Before the court is defendant Walmart's motion for summary judgment. (Dkt. #22.) Because the court finds that plaintiff has failed to put forth sufficient evidence from which a reasonable jury could find discrimination, the court will grant defendant's motion and enter judgment in its favor.

PRELIMINARY MATTER

Before turning to defendant's motion for summary judgment, the court first must address plaintiff's motion to strike the declaration of Lisa Riley. (Dkt. #30.) As set forth in her declaration, Riley has been employed by Walmart in a variety of positions for almost 27 years, including most recently as Vice President of Global Compensation. (Riley Decl. (dkt. #27) ¶¶ 4-5.) Riley further declares under oath that: "I have personal knowledge of the facts set forth in this Declaration, or I have knowledge of such facts based on my review of company business records and files." (*Id.* ¶ 2.) Moreover, Riley states that "[t]he

company business records and files I reviewed, including those attached hereto, were made and kept in the regular course of Walmart's business, and are of the type I access and reference in the course of my work duties for Walmart." (*Id.* ¶ 3.) Riley also attaches 54 exhibits to her declaration, consisting largely of Walmart's "Field Management Compensation Guidelines," excerpts from Walmart's associate handbook, plaintiff's employment history and the employment files of various possible comparators, who like Van Gorp, worked as Assistant Store Managers ("ASMs") at one of the two stores at which she was employed as an ASM. (*Id.*, Exs. 1-54 (dkt. ##35, 27-2 to 27-54).)[1] As Riley explains, "ASMs are the lowest level of salaried management within a store," and both internal employees (referred to by Walmart as "associates") or "external hires" who wish to become ASMs "must first complete Walmart's Manager-In-Training ("MIT") program before being eligible for an ASM position." (*Id.* ¶¶ 11-12.)

Plaintiff seeks to strike portions of Riley's declaration, "includ[ing] numerous improper statements not based on personal knowledge and not clearly evidenced by the corporate records upon which she relies." (Pl.'s Br. (dkt. #31) 1.) Specifically, plaintiff challenges Riley's declarations that certain employees "received a percentage raise or received a certain pay rate 'per the Compensation Guidelines.'" (*Id.* at 2.) Plaintiff argues that Riley cannot make such representations without personal knowledge "of the reasoning for *any* of the specific pay decisions at issue." (*Id.* at 3.) However, the court does not construe these declarations so broadly. Rather than offering the specific reason for a

---

[1] Defendant filed a corrected Exhibit 1 at dkt. #35 after realizing that there were pages missing from the original filing.

compensation decision, Riley is simply declaring that a starting rate, an annual performance increase, or a pay increase tied to a promotion or transfer is *consistent* with Walmart's Compensation Guidelines.  This testimony falls entirely within Riley's long-standing work in various compensation-related roles at Walmart set out in her declaration, particularly when coupled with her ability to review employment records and draw conclusions from those records based on contemporaneous compensation policies.  With this limitation, the court sees no basis to strike Riley's declarations.

Plaintiff also challenges Riley's declarations as to one comparator in particular.  With respect to John King, Riley states, "Walmart has been unable to locate a copy of King's hiring data; however, his MIT starting rate is consistent with him having had relevant education, experience or skills, or having worked for a competitor, which would have warranted more than the minimum."  (Riley Decl. (dkt. #27) ¶ 67.)  Plaintiff similarly dismisses this statement as "speculation," rather than based on personal knowledge.  Again, however, plaintiff fails to confront Riley's statement, since she is *not* offering testimony as to what actually motivated an individual Walmart decisionmaker to set King's starting salary; rather, she is simply declaring that his higher starting salary as a MIT would be consistent with an external hire who has relevant experience, including having worked for a competitor.  Not only is this general information relevant, but Van Gorp's own deposition testimony confirms not only that King had worked for a competitor, as well as her own belief that his past experience was the basis for the higher starting salary he received.  (Van Gorp. Dep. (dkt. #26) 104.)

Finally, plaintiff criticizes Riley for admitting deviations from Walmart's standard

policies in some instances while declining to state if a decision was consistent or inconsistent with policy in other instances.  But this is really *no* basis to strike Riley's declaration at all.  At most, these paragraphs may provide an opening for plaintiff to claim more discretion than Walmart described, or room for a reasonable trier of fact to infer such discretion.

For all these reasons, the court will deny plaintiff's motion to strike, while acknowledging that Riley's declarative statements may simply support a finding that some compensation decisions could be explained by the Compensation Guidelines, rather than provide definitive proof of the basis for those decisions.  With that initial issue aside, the court will turn to the parties' proposed findings of fact.

UNDISPUTED FACTS[2]

**A.  Relevant Period**

As noted above, plaintiff was a member of a class of women who brought claims of gender discrimination against Walmart.  The Supreme Court decertified that putative class in *Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338 (2011).  Because the limitations period for the claims asserted in *Dukes* began on December 26, 1998, the limitations period for plaintiff's claim in this litigation began on that date, at the earliest, under the tolling rules. (Def.'s PFOFs (dkt. #24) ¶ 4; Pl.'s Resp. to Def.'s PFOFs (dkt. #33) ¶ 4 (stating no dispute); *see also* Def.'s Opening Br. (dkt. #23) 1 & n.1.)

---

[2] Unless otherwise noted, the court finds the following facts material and undisputed when viewing the evidence in a light most favorable to plaintiff, as the non-moving party.

Following the decertification of the *Dukes* class action, plaintiff promptly filed her individual Charge of Discrimination with the Equal Opportunity Employment Commission on April 27, 2012, but for reasons that are not clear, plaintiff was not issued a right to sue letter by the EEOC until June 12, 2019.  (Compl. (dk. #1) ¶ 6.)  Regardless, the parties here agree that the "relevant period" for plaintiff's claim covers the period from December 26, 1998, to May 30, 2003, which is the date plaintiff was promoted to a Co-Manager position.

### B.  Plaintiff's Employment History with Walmart

At the time Van Gorp originally began working for Walmart as an hourly associate on October 9, 1993, she had no prior retail experience and no prior management experience.[3]  Van Gorp started at the hourly rate at $5.50 in 1993 and received several pay adjustments, including performance increases over the next two years.  At some point during this period, Van Gorp also worked as the department manager for the shoe department at Store 1576 in Schereville, Indiana.  By October 1997, Van Gorp was working at Store 1497, her hourly rate had increased to $7.84 as of October 1997, and her Store Manager recommended Van Gorp for promotion to MIT.  On December 20, 1997, Van Gorp was promoted to MIT and received a pay increase to the minimum MIT rate of $10.18 per hour.

---

[3] Plaintiff points out that she had taken some management coursework as part of her bachelor's degree study, but she earned her bachelor's degree in Education in 1997, four years after her start date with Walmart.

Plaintiff's discrimination claim is based on her salary after being an ASM.[4]  Upon successfully completing the MIT program, plaintiff was first promoted to ASM at Store 923 in Noblesville, Indiana on June 20, 1998.  Her starting salary was $1,134.62 bi-weekly, which was the minimum ASM starting salary per Walmart's Compensation Guidelines at the time.  For her annual performance evaluation in February 1999, Van Gorp received a 3.300 rating, which equated to "meets expectations," and she received a 6% pay increase to $1,202.70 bi-weekly as of April 11, 1999, again consistent with the Compensation Guidelines.[5]  As defendant notes, this was the first compensation decision made after December 26, 1998, and thus, the first actionable event within the applicable limitations period.  For her next annual performance evaluation in January 2000, Van Gorp received a 3.200 rating, which again fell in the meets expectations range, and she received a 5% pay increase to $1,262.84 bi-weekly as of April 9, 2000.  Walmart points out that this April 2000 pay increase was actually 2% more than the percentage set by the Compensation

---

[4] Plaintiff also testified at her deposition that upon completing the MIT program, female ASMs typically went into the apparel or front-end ASM roles while male ASMs typically worked in other departments.  (Pl.'s Add'l PFOFs (dkt. #33) ¶ 264.)  This fact, however, does not appear to be material since she is not claiming, nor does she develop any evidence to support a finding that ASMs were paid differently based on their specific assignments.  To the contrary, defendant represents that MIT and ASM pay were not based on department.  (Def.'s Resp. to Pl.'s Add'l PFOFs (dkt. #39) ¶ 264.)

[5] Plaintiff testified to her general belief that the performance review process and resulting pay changes were sometimes discriminatory, "because in situations where you could find certain individuals would score higher, it wasn't factual based, it was opinionated. . . . It was based upon what the store manager believed your capabilities were."  (Pl.'s Add'l PFOFs (dkt. #33) ¶ 268 (quoting Van Gorp Dep. (dkt. #26) 128.)  However, plaintiff fails to develop any evidence that her Store Managers discriminated against her based on sex in rating her performance during annual reviews.  To the contrary, plaintiff did not dispute that the individual Store Managers at both Store 923 and later 1931 were supportive of her career and recommended her for promotions.  (Def.s' PFOFs (dkt. #24) ¶¶ 51, 168.)

Guidelines for a meets expectations rating, but does not explain the reason for this discrepancy.

On June 6, 2000, Van Gorp transferred to Store 1931 in Rhinelander, Wisconsin, at her request, and retained the same salary as at Store 923. Van Gorp worked as an ASM from June 6, 2000, to January 4, 2001, then as a Night Receiving Manager from January 5, 2001, to January 25, 2002, and then again as an ASM from January 26, 2002, to May 30, 2003. For her annual performance evaluation in 2001, Van Gorp received a score of 3.600, which equated to meets expectations, and received a 5% pay increase to $1,325.98 bi-weekly as of April 8, 2001. For 2002, she received a 3.500, again a meets expectations rating, and received a 4% pay increase to $1,379.02, bi-weekly as of April 7, 2002. In 2003, Van Gorp received a score of 4.000, which equated to exceeds expectations, and received a 6% pay increase to $1,461.77 bi-weekly as of April 6, 2003. On May 31, 2003, she was promoted to Co-Manager and transferred to a different store.

### C. Walmart's Management Structure

Walmart's business is generally divided into five divisions: Walmart, Sam's Club, E-Commerce, International and Corporate. Multiple Walmart stores are grouped into Markets, with each Market supervised by a Market Manager, who works in the field and is typically based at one of that Market's stores. Markets are then grouped into Regions, containing roughly 50 to 100 stores, with each Region led by a Vice President.

Each Walmart store is also divided into departments, such as Bakery, Electronics, Toys, Grocery Dry Goods, Lawn and Garden, Pets and Supplies and Sporting Goods. Each department is supervised by an associate (employee) who holds the position of Department

Manager, still an hourly position.  Each Department Manger then reports to an Assistant Store Manager or ASM, as the lowest level of salaried management within a store. Ultimately, each Walmart store is led by a Store Manager.  ASMs report to the Store Manager and, in some stores, a "Co-Manager" (a level of salaried management between ASMs and Store Manager).  ASMs are evaluated by either the Store Manager or Co-Manager.

As previously mentioned, associates and external hires who wish to become salaried ASMs must generally first complete a Manager-in-Training or MIT program, which typically trains MITs in groups and lasts between three and six months.  After completion, MITs are matched to an open ASM position, either in their existing store or in another store.[6]

### D. Walmart's Pay Policies

Procedures for compensation at Walmart are set forth in its Compensation Guidelines, which are generally updated on an annual basis.[7]  Under the Guidelines, each facility has its own specific pay structure with jobs in the same pay classification having the same minimum starting pay rate.  A facility's pay structure is based on local competitive

---

[6] While Walmart represents that any relocation was "voluntary," plaintiff represents she was told that to be promoted to ASM, she would need to relocate to Noblesville, Indiana.  (Pl.'s Resp. to Def.'s PFOFs (dkt. #33) ¶ 13.)  However, this dispute is not material to plaintiff's claim.

[7] Plaintiff purports to dispute this proposed finding, pointing to Riley's testimony that there can be some variance in how often the guidelines are updated, but that testimony is entirely consistent with defendant's proposed finding that the guidelines are *generally* updated on an annual basis. (Pl.'s Resp. to Def.'s PFOFs (dkt. #33) ¶ 17.)

pay rates for comparable jobs, including starting rates.  Each facility's pay structure is also reviewed annually to ensure pay rates remain competitive within that local labor market.

During plaintiff's employment, associates could receive a pay increase based on the following events:  (1) a performance evaluation completed 90-days after being hired and annually thereafter, provided the associate was meeting or exceeding expectations; (2) transfer to a position in a higher pay grade; (3) transfer to a larger or different type of store; (4) transfer to a store in a higher-paying market; (5) when a store's facility starting rate was adjusted upward due to market conditions; (6) a promotion; and (7) until 2006, for "merit."

While in the program, MITs were paid an hourly rate.  As of 1997, Walmart's Compensation Guidelines set the minimum start rate for MITs at $10.18, which was approximately equivalent to $27,500 in annual salary, assuming that an MIT worked 48 hours per week.  Associates who earned less than the minimum MIT start rate before entering the program received a pay increase to the minimum start rate upon beginning the program.  At that time, Riley represents that it was Walmart's practice not to reduce an associate's hourly rate upon entering the MIT program, although plaintiff points out that the salary of one of her comparators, who entered the program from a Lab Manager position, actually had his salary reduced.  (Pl.'s Resp. to Def.'s PFOFs (dkt. #33) ¶ 25 (citing Def.'s PFOFs (dkt. #24) ¶ 132).)

For external hires entering directly into the MIT program, Walmart also gave Store Managers discretion to offer particularly qualified candidates more than the minimum MIT start rate.  In setting a rate above the minimum, Store Managers and District Managers

could consider the candidate's relevant education, prior retail or similar work experience (especially if attempting to hire from a competitor), prior management experience, and any special skills.  Plaintiff does not dispute that this may have been Walmart's general practice, but she "disputes this fact to the extent it implies that this definitively explains [her] comparators' increased pay."  (Pl.'s Resp. to Def.'s PFOFs (dkt. #33) ¶ 26.)

As for ASMs, when plaintiff entered the MIT program, the Compensation Guidelines set the minimum ASM starting salary at $2,000 above annualized MIT pay -- in other words, $29,500 per year.  Similarly, associates who were paid more than the minimum MIT rate received a $2,000 increase upon promotion to ASM.  As previously mentioned, ASM pay could also be adjusted upwards based on the size and geographic location of the store where the ASM was actually placed.  Those decisions were also left to Store Managers and District Managers.[8]

As also noted, all ASMs are *eligible* to receive annual, performance-based pay increases.  Under the Compensation Guidelines, the amount of an ASM's annual pay increase is a set percentage determined by his or her annual evaluation as completed by Store Managers and approved by District Managers, their current pay, and the size of the store in which that ASM works.  Although pointing out that she received a larger pay increase than was warranted by her "meets expectation" rating for one year, plaintiff again

---

[8] Although unusual, some external hires who had prior relevant experience could be placed directly into an ASM role without first working as an MIT.  Like an ASM promoted upon completion of a MIT program, Store Managers and District Managers could set that ASMs starting rate after considering relevant education, experience at other retail or similar companies, management experience, and other special skills.  Here, too, plaintiff does not dispute that this was Walmart's general practice, but disputes whether this explains any increased pay on the part of her comparators.

does not dispute that this is Walmart's general policy.  (Pl.'s Resp. to Def.'s PFOFs (dkt. #33) ¶ 36 (citing Def.'s PFOFs (dkt. #24) ¶ 59).)  Although uncommon, ASMs could also receive merit pay increases during the relevant period (December 1998 to May 2003).[9]

### E. Comparator Data

#### 1. Store 923

Plaintiff originally identified two, male ASMs working at Store 923 during the relevant period who were paid more than she:  Erik Conrad and John King.  In her deposition, Van Gorp testified to her understanding that "at one time [both] worked [at a local competitor's store], and they got more pay because of it."  (Def.'s Reply to Def.'s PFOFs (dkt. #38) ¶ 61 (quoting Van Gorp Dep. (dkt. #26) 104).)  She also agreed with defendant's counsel that "any disparity in your pay and what [Conrad and King] made was based on the fact that they had quit and worked elsewhere, and then [came] back."  (*Id.*) In her opposition brief, however, plaintiff drops Conrad as a comparator, and along with John King, names two new comparators:  Todd Noskey and William Johnston.  In light of plaintiff's present focus on King, Noskey and Johnston, the court will summarize the relevant facts for those three individuals.[10]

---

[9] Plaintiff makes much of the fact that merit-pay increases were permitted before 2006 (Pl.'s Add'l PFOFs (dkt. #33) ¶ 271), but does not contend that she missed out on those opportunities or that any of her male comparators received such an increase; as described next, the record also does not support such a finding.  Similarly, defendant submits proposed findings of facts concerning Walmart's anti-discrimination policies, but none of these facts appear to be material to plaintiff's claims.  At minimum, those policies are not material to defendant's argument for summary judgment in its favor.

[10] Defendant offers additional, proposed findings of facts -- the bulk of which are undisputed -- on a number of other employees, including Erick Conrad and every other male ASM working at Store 923 during plaintiff's tenure.  (Def.'s PFOFs (dkt. #24) ¶¶ 62-72, 82-138, 150-59.)

John King's and Van Gorp's employment as ASMs at Store 923 overlapped between December 19, 1998, and July 30, 1999.  King was hired directly into the MIT program at Store 923 at the rate of $13.68 per hour on May 30, 1998, just over six months before plaintiff's hiring.  Walmart was unable to locate a copy of King's hiring data, and, thus, cannot definitively prove the reason for King's starting rate.  However, as described above in denying plaintiff's motion to strike Riley's declaration, Riley does aver that King's starting rate is consistent with his having had relevant education, experience or skills, or having worked for a competitor, each of which would have warranted more than the minimum MIT starting rate of $10.18 per hour.  Defendant also points out that plaintiff testified at her deposition that King described previously working for one of Walmart's competitors, and she believed he was paid more due to that.  (Def.'s PFOFs (dkt. #24) ¶ 75 (citing Van Gorp Dep. (dkt. #26) 104).)[11]  After completing the MIT program, King was offered an ASM position at Store 923 on December 19, 1998, at a rate of $1,423.08 bi-weekly, which was approximately the equivalent of his annualized MIT rate plus the $2000 bump upon promotion to ASM.  For his 1999 annual evaluation, King received a 3.200 rating, which equated to meets expectations, and received a 6% pay increase -- the same percentage pay increase that plaintiff received in 1999.  King resigned on July 30, 1999.

Plaintiff also points to Todd Noskey as a comparator.  Noskey overlapped as ASM with plaintiff at Store 923 from July 5, 1999 (Noskey's date of hire), until January 1, 2000

---

[11] The court addresses the relevance of this testimony below, but even if barred for the truth of King's hearsay statement, it goes to plaintiff's own belief as to whether King is a fair comparator.

(when he transferred to another store). Before working at Walmart, Noskey worked: seven years as a store manager for Foot Locker; one year as a merchandise manager for Marshalls Department Store; and as a personnel manager while serving in the U.S. Navy. Apparently without having to complete the MIT program given his experience, Noskey was hired directly into an ASM position at Store 923 at the rate of $1,442.31 bi-weekly. As Riley explained in her declaration in particular, both Noskey's placement directly into an ASM position and his above-minimum, ASM starting rate were consistent with his significant prior experience as a store manager.

Finally, plaintiff points to comparator William Johnson, a fellow ASM at Store 923, with whom she overlapped for less than two months from March 11 until May 6, 2000 (when plaintiff transferred to Store 1931). Before working at Walmart, Johnston had more than seven years of management experience in the restaurant industry, and he had also worked as a training coordinator. Johnson was hired into the MIT program at Store 923 on October 25, 1999, at the rate of $12.76 per hour, which Riley avers within a Store Manager's discretion to pay given his management experience. After completing the MIT program, Johnson was promoted to ASM at Store 923 on March 11, 2000, at the rate of $1,403.85 bi-weekly, which was approximately the equivalent of his annualized MIT rate, plus the standard $2,000 bump under the Compensation Guidelines.

## 2. **Store 1931**

At her deposition, plaintiff identified four, male ASMs at Store 1931 who were paid more than she was: Mark Anderson, Gregory Norman, "Bob" (last name unknown) and Nick Johnson. (Def.'s PFOFs (dkt. #24) ¶ 179 (citing Van Gorp Dep. (dkt. #26) 110-

113.)  Plaintiff does not dispute that this was her testimony, but in response to defendant's motion for summary judgment, she simply states generally that after her transfer to Store 1931, "male ASMs continued to out-earn Plaintiff, despite her comparable experience, performance, and tenure."  (Pl.'s Opp'n (dkt. #32) 4-5.)

As for the four she originally identified, defendant could not locate an employee named Nick or Nicholas Johnson who worked at Store 1931.  Defendant did locate a Nicholas Johnson at Store 2434 -- a store at which plaintiff worked during her tenure with Walmart -- but she does not claim discrimination during her employment at that store.  As for "Bob," defendant located a Robert Wilkinson who worked as an ASM at Store 1931 during plaintiff's tenure.

Noting that plaintiff failed to point to any specific, male employee as a comparator at Store 1931 in opposition to defendant's motion for summary judgment, the court will nonetheless review the facts offered as to Mark Anderson, Gregory Norman, and Robert Wilkinson.[12]

Mark Anderson's employment at Store 1931 overlapped with Van Gorp from April 21, 2001, to April 18, 2003.  Van Gorp testified at her deposition that she believed Anderson made more money than she because he sometimes discussed spending "large sums of money" on weekends in bars and on video games.  (Def.'s PFOFs (dkt.#24) ¶ 185 (citing Van Gorp Dep. (dkt. #26) 114-16).)  However, the record evidence establishes -- and plaintiff does not dispute -- that Anderson actually earned less than plaintiff.

---

[12] As it did with Store 923, defendant also offers proposed facts with respect to every other male ASM employed at Store 1931 at the same time as plaintiff.  (Def.'s PFOFs (dkt. #24) ¶¶ 216-56.)

Specifically, Anderson was hired into the MIT program at a different store, then promoted to ASM and transferred to Store 1931 on April 21, 2001, at the rate of $1,211.54 bi-weekly, which was less than the $1,325.98 plaintiff was earning at the time.[13] For his 2002 annual performance, Anderson received a score of 3.400 (meets expectations) and received a 4% pay increase, the same percentage as Van Gorp, increasing his pay to $1,260.00 bi-weekly as of April 7, 2002, which, of course, remained less than that earned by plaintiff, at that time, $1,379.02 bi-weekly.   For his 2003 annual performance, Anderson received a 3.800 rating (exceeds expectation) and received a 5% pay increase, 1% less than plaintiff who also received an exceeds expectation rating for that year. Accordingly, as of April 6, 2003, Anderson was paid $1,323.00 bi-weekly, compared to plaintiff's earning $1,461.77 for the same period.  Anderson was transferred out of Store 1931 on April 19, 2003.

Next, plaintiff's employment at Store 1931 overlapped with Gregory Norman from August 12, 2000, to January 24, 2003.  Again, she testified at her deposition to her belief Norman earned more than she because he bragged of spending "large sums of money" on the weekends.  (Def.'s PFOFs (dkt. #24) ¶ 194 (citing Van Gorp Dep. (dkt. #26) 114-16).)  In fact, Norman was hired as an hourly associated on October 10, 1995, entered the MIT program on March 27, 1999, and was promoted to ASM at another store on August 14, 1999.  At that time, Norman was paid the minimum ASM start rate of $1,134.62 bi-weekly, exactly as plaintiff had been.  As a result of his 2000 annual performance

---

[13] For reasons that are not clear, defendant also notes that Anderson's initial rate at Store 1931 was slightly less than it should have been had Walmart applied the customary formula annualizing MIT pay and adding $2,000.

evaluation, Norman's salary increased to $1,191.45, and on August 12, 2000, Norman transferred to Store 1931, at which point his pay increased to $1,273.07 bi-weekly or $10.23 more bi-weekly than plaintiff earned in the same position until January 4, 2001, when she switched to Night Receiving Manager.  For his 2001 performance evaluation, Norman received a rating of 3.500 (meets expectations) and received a 5% pay increase, the same as plaintiff, which Riley further averred was consistent with Walmart's Compensation Guidelines.  As of April 8, 2001, Norman was paid $1,336.72.  For 2002, Norman received a 3.500 rating (again, meets expectations) and received a 4% pay increase -- the same as plaintiff -- which Riley averred was consistent with the Compensation Guidelines.   As of April 7, 2002, Norman was paid $1,390.19 bi-weekly.   Norman transferred out of the store on January 25, 2003, at which time, plaintiff earned $1,379.02 bi-weekly or $11.17 less than Norman had on a bi-weekly basis.

Finally, with respect to Robert Wilkinson, plaintiff's employment at Store 1931 overlapped with Wilkinson as ASMs from October 6, 2001, to May 30, 2003.   At her deposition, plaintiff testified that she believed "Bob" was paid more because "[h]e was a recruit from the competitors, Big Lots and Menards," and recruits from competitors were sometimes paid higher rates.  (Def.'s PFOFs (dkt. #24) ¶ 206 (quoting Van Gorp Dep. (dkt. #26) 111).)  Before working at Walmart, Wilkinson had two years of experience working as a Store Manager for Big Lots and had a bachelor's degree in Business & Economics.  Wilkinson was also originally hired as an MIT at another Walmart store on May 19, 2001, earning $12.94 per hour, a rate consistent with his relevant education and experience, as well as with his being hired from a competitor.  When Wilkinson was

16

promoted to ASM and transferred to Store 1931 on October 6, 2001, he received a starting rate of $1,230.77 bi-weekly, actually less than what plaintiff was earning at that time ($1,325.98). However, when it was discovered the month following his promotion that Wilkinson's starting rate was lower than it should have been based on the standard calculation after annualizing his MIT hourly rate, his pay was adjusted to $1,346.16 bi-weekly, or $10.09 more bi-weekly than plaintiff. For his 2002 annual evaluation, Wilkinson received a rating of 3.400 (meets expectations) and received a 4% pay increase, the same as plaintiff, increasing his bi-weekly pay rate to $1,400.01, again staying just above plaintiff at $1,379.02 bi-weekly. For 2003, Wilkinson received a rating of 3.700 (meets expectation), and again received a 4% bump, which was 2% less than plaintiff's increase that year, given that she had received an exceeds expectations rating. As a result, by April 6, 2003, Wilkinson was paid $1,463.02 bi-weekly, which was just *63 cents* per week more than plaintiff. And on May 31, 2003, plaintiff was promoted and transferred to a different store.[14]

## OPINION

Plaintiff contends that defendant discriminated against her on the basis of sex by paying her less than male ASMs. Traditionally, in opposing a motion for summary judgment, plaintiff would support a Title VII sex discrimination claim using the direct or indirect method. More recently, the Seventh Circuit has discouraged district courts from

---

[14] Defendant also submits evidence of two other female ASMs at Store 1931 who were the two *highest* paying ASMs during the relevant time. (Def.'s PFOFs (dkt. #24) ¶¶ 173-78.) While this does not foreclose plaintiff's pay discrimination claim, it undercuts any claim that women at Store 1931 during the relevant period were generally paid less than men.

separating evidence under "different methods of proof," including in particular methods articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1975).  Instead, the Seventh Circuit encourages courts to consider evidence "as a whole."  *Golla v. Office of the Chief Judge of Cook Cty.*, 875 F.3d 404, 407 (7th Cir. 2017) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

While the *McDonnell Douglas* framework remains useful in certain contexts, *Ortiz*, 834 F.3d at 766, the Seventh Circuit's preferred approach is particularly appropriate in the context of this plaintiff's pay discrimination claim, where the required "adverse employment action" under the indirect method is being paid less than a similarly-situated, non-protected individual, *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 274 (7th Cir. 2004),[15] and the only category of circumstantial evidence plaintiff attempts to develop under the direct method is the same proof of purportedly favored comparators articulated by the Seventh Circuit in *Diaz v. Kraft Foods Glob., Inc.*, 653 F.3d 582 (7th Cir. 2011).[16] Indeed, even if the court were to find that plaintiff has met her burden of establishing all

---

[15] To establish a prima facie case of an equal protection violation under the *McDonnell Douglas* framework, plaintiff must show that:  "(1) [s]he is a member of a protected class, (2) [s]he is similarly situated to members of the unprotected class, (3) [s]he suffered an adverse employment action, and (4) [s]he was treated differently from members of the [un]protected class."  *Williams*, 342 F.3d at 788.

[16] In *Diaz*, the Seventh Circuit identified three possible categories of such circumstantial evidence:

> (1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action.

*Id.* at 587.

18

four factors to make a prima facie showing that "defendants treated her differently from others who were similarly situated," and this differential treatment was "because of her membership in the class to which she belonged," *Hedrich v. Bd. of Regents of the Univ. of Wis. Sys.*, 274 F.3d 1174, 1183 (7th Cir. 2001), the defendant has certainly put forward nondiscriminatory, legitimate reasons for these differences. *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003). Thus, as lengthy as the factual section is above, this opinion section will be quite brief in light of plaintiff's utter failure to develop any cogent opposition to defendant's motion. Whether viewed as an element of her prima facie claim -- that she was paid less than a similarly-situated, non-protected individual -- or as defendant's proffered basis for paying her less than some male ASMs, plaintiff fails to put forth sufficient evidence from which a reasonable jury could find intentional discrimination by proof of pretext or circumstantial evidence.

*First*, with respect to her pay at Store 923, plaintiff points to three comparators: John King, Todd Noskey and William Johnston. The undisputed record reflects, however, that unlike plaintiff, all three individuals were hired into the MIT role (or directly into the ASM role, as was the case with Noskey) with significant experience, including having worked for some of Walmart's direct competitors. Moreover, while King's specific hiring data could not be located, Riley plausibly avers that his starting rate was consistent with having relevant work experience, including having worked for a Walmart competitor, something plaintiff herself testified King corroborated, convincing even her that he was paid more due to his superior experience. (Def.'s PFOFs (dkt. #24) ¶ 75 (citing Van Gorp Dep. (dkt. #26) 104).) As for Noskey, it is undisputed that he had seven years of

experience as a retail store manager and another year working for a Walmart direct competitor, among other managerial experience.  Finally, there is no dispute that Johnson had seven years of management experience.   In contrast, the evidence is that:  (1) plaintiff was hired without any retail or management experience; (2) she was bumped up from her hourly rate to the standard minimum MIT rate at the time of her promotion and (3) bumped again to the standard ASM minimum salary, both consistent with Walmart's Compensations Guidelines.

While plaintiff correctly points out that "the requirement that employees be similarly situated is not an unyielding, inflexible requirement that require[s] near one-to-one mapping between employees" (Pl.'s Opp'n (dkt. #32) 5 (quoting *Bozek v. Wal-Mart Stores, Inc.*, No. 15-CV-10, 2017 WL 590282, at *4 (N.D. Ill. Feb. 14, 2017)), this court is also instructed to consider various factors, including whether comparators "had comparable experience, education, and other qualifications," *David v. Bd. of Trus. Cmty. College Dist. No. 508*, 846 F.3d 216, 226 (7th Cir. 2017).  Here, defendant submits undisputed evidence that each of the comparators in Store 1931 had markedly different managerial work experiences than plaintiff when hired and that the hiring decisionmakers likely relied on these work experiences in setting their starting salary, *or* at minimum, plaintiff has failed to present any evidence to allow a reasonable jury to find the reasons proffered were pretext, especially when plaintiff's evaluations and pay increases were generally as good or better than her male comparators at either store once hired by Walmart.

Moreover, the law is clear that differences in experience are legitimate bases for a

difference in starting pay. *See, e.g.*, *Warren v. Solo Cup, Co.*, 516 F.3d 627, 631 (7th Cir. 2008) (affirming grant of summary judgment because alleged comparator is "not materially comparable in education, experience, and computer aptitude, and [defendant] considered these differences when deciding to pay Lorenz a higher hourly rate"); *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 976 (7th Cir. 2000) ("Experience is a nondiscriminatory reason for wage disparity."). The Seventh Circuit has also explained that the lingering effects of a higher starting salary is a legitimate basis for a continued difference in pay between a plaintiff claiming pay discrimination and an alleged comparator. *See Covington v. S. Ill. Univ.*, 816 F.2d 317, 324 (7th Cir. 1987) ("The flaw in Covington's argument is that Lemasters' starting and ending salaries as art advisor were influenced by his previous period of employment in the School of Music."). Indeed, this latter factor seems to account for the relatively small differences in plaintiff's pay and her comparators at both stores.

Finally, the record reflects that while these three employees had higher starting salaries at store 923 than plaintiff, she was treated the same as King -- the only one of the three for which she had an overlapping, annual performance evaluation -- in both their ratings (having each received a "meets expectation" rating) and their percent salary increase (6%). As such, plaintiff cannot point to differential treatment as part of performance evaluations and/or salary increases to support her pay discrimination claim with respect to Store 923.

*Second*, with respect to Store 1931, plaintiff simply asserts that "male ASMs continued to out-earn Plaintiff, despite her comparable experience, performance, and tenure," then cites generally to 40 paragraphs of defendant's proposed findings of facts in

support.  (Pl.'s Opp'n (dkt. #32) 4-5.)  As an initial matter, the court could simply conclude that plaintiff failed to meet her burden of identifying any comparators to advance under the indirect method or any circumstantial evidence to support a jury finding of intentional discrimination based on the direct method.  *See Carr v. Wis. Dep't of Corr.*, 129 F. App'x 306, 310 (7th Cir. 2005) ("A general allegation that others were treated better is not enough to survive summary judgment absent a showing of otherwise similar circumstances[.]").

Even so, the court again considered the evidence with respect to the comparators she named in her deposition, if not in her opposition brief:  Mark Anderson, Gregory Norman and Robert Wilkinson.  Once again, the undisputed evidence does not permit a finding that she was paid less than a similarly-situated, non-protected individual.  With respect to Mark Anderson, the undisputed record reflects that *he* was paid less than plaintiff for the relevant period of time. Indeed, at the time he was proposed promoted to ASM and transferred to Store 1931 in April 2001, he was paid $1,211.54 bi-weekly, compared to $1,325.98 plaintiff was earning bi-weekly at the time.  Moreover, for the two overlapping performance reviews with plaintiff, while Anderson received the same performance ratings as plaintiff, for reasons that are not entirely clear, he received only a 5% increase as compared to plaintiff's 6% increase for the 2003 annual performance.  As a result, Anderson was not only paid less than plaintiff for the *entire* period that their work overlapped at Store 1931, but the pay differential actually *increased* in plaintiff's favor over time.

Next, Gregory Norman was paid slightly more than plaintiff when he transferred to

Store 1931 as an ASM in August 2000, he was being paid $1,273.07 bi-weekly as compared to plaintiff's salary of $1,262.84 bi-weekly.  As defendant rightly points out in its opening brief, such a "minimal discrepancy" in pay is unlikely to support a finding of "adverse action" by a reasonable trier of fact (Def.'s Opening Br. (dkt. #23) 22-23 (citing cases)), but even if it could, Norman's rate of pay was set at a different store by different managers, and, therefore, no reasonable jury could find that he is similarly-situated.  *See David*, 846 F.3d at 225-226 (requiring consideration of whether the employees "were subordinate to the same supervisor").  As for the overlapping performance evaluations at Store 1931, for both 2001 and 2002 annual reviews, Norman and plaintiff received the *same* ratings and percent salary increases.

Finally, with respect to Robert Wilkinson, the record reflects, as Van Gorp testified at her deposition, that Wilkinson was hired as an MIT at a different store after having had two years of experience working as a Store Manager for Big Lots, a Walmart competitor. Once he was promoted to ASM and transferred to Store 1931 in October 2001, his salary was set to $1,346.16 bi-weekly, as compared to plaintiff's salary at that time of $1,325.98. Again, the court questions whether a salary differential of roughly $20 bi-weekly would form a reasonable basis for finding an "adverse action," but there is no reasonable dispute that Wilkinson had significant prior work experience and was hired from a competitor, both of which justify a higher MIT starting salary, which then translated into a slightly higher ASM salary, at least absent *some* evidence of pretext.  Moreover, for the 2002 performance evaluation, plaintiff and Wilkinson received the *same* rating and percent salary increase.  Finally, in 2003, plaintiff received a *higher* rating and, in turn, a higher salary

bump, at which point Wilkinson was paid roughly 63 cents more in salary per week more than plaintiff.

Once again, the court concludes that, with respect to her claim resting on her time as an ASM at Store 1931, plaintiff has failed to put forth sufficient evidence from which a reasonable jury could find that she was paid less than a similarly-situated, non-protected individual.   Accordingly, the court must grant summary judgment in defendant's favor.

ORDER

IT IS ORDERED that:

1) Plaintiff Allison Van Gorp's motion to strike declaration of Lisa Riley (dkt. #30) is DENIED.

2) Defendant Wal-Mart, Stores Inc.'s motion for summary judgment (dkt. #22) is GRANTED.

3) The clerk's office is directed to enter judgment in defendant's favor and close this case.

Entered this 4th day of January, 2021.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge